Before I begin to talk about the substantive part of my argument, in preparation I realized that I had inadvertently raised an issue that is beyond the scope of the COA that I was granted, and that's the sixth subpart of my claim that has to do with the failure of counsel to file an appeal on behalf of Mr. Lavoll. I did not intend to include any uncertified issue, and it was completely inadvertent. I apologize. Finally, this happens. Most people just aren't willing to acknowledge it, and we really do appreciate you bringing it to the Court's attention and your candor. Thank you. To go to the certified issue, in this case, Mr. Lavoll, due to the actions of his lawyers, lost the right to voluntarily participate in the decision to plead guilty when his lawyer told him that the jury was going to convict him because he was black, because the alleged victims in the case were white, and it didn't matter if he had a defense. Under the Hill case, first we looked to whether the lawyer was acting outside of Strickland in his conduct with respect to the client, and clearly it would be inappropriate for a lawyer to ever tell a client that it didn't matter if he had a defense or not in going to trial. This is similar to the Nunes case. The problem is that Mr. Lavoll lost the right to decide his own fate when his lawyer told him it just doesn't matter. You don't have a defense. According to Mr. Lavoll's affidavit, which appears in the record at 77 and 78, which is the only evidence that's been presented on this particular issue, his lawyer told him it didn't matter if he had a defense and it was a waste of resources to try his case. Mr. Lavoll was a pro se litigant. He was not given the opportunity to develop those facts further in the state court because he was not provided a hearing. I think we understand the issues and the contentions. It seems to me the question you have is in these areas of coercion, elements of defense and rights waiving, is that the district court, the trial court came to a conclusion based upon what was in the written plea agreement and based upon the colloquy that the court had with your client that there was not coercion. The elements of the offense were determined and there was rights waived. Now, it seems to me that you have a burden then to tell us why that's an unreasonable application, unreasonable findings. This is both an unreasonable application of the facts and an unreasonable determination of the facts as presented. The only statement that the Nevada Supreme Court makes on this issue is that the records reveal the defendant was not coerced and that's on page 88 of the record. If you look to the state court, the trial court decision, they simply say the plea was voluntarily entered. Neither of the courts addressed the specific issue raised by Mr. Lavoll in his affidavit that my lawyer told me it didn't matter if I had a defense, I couldn't go to trial because I was black and the victims were white. They simply didn't look at it. They ignored the fact completely, and they did not provide Mr. Lavoll with a hearing to look further into those facts. Well, they, you know, they don't have to, we don't require a certain level of detail in their opinions in order to uphold them under AEDPA. And the question about it being a waste of resources, it seems to me that would be an unreasonable interpretation to say that that isn't coercion. I am more troubled by the one where he says, you know, basically who's going to be on the jury and they're going to be racist, et cetera. So, you know, basically the system won't let you have a trial. That troubles me more. Maybe you could address that point. Certainly. One of the important things, once Mr. Lavoll is told this and he pleads guilty, one of the points made by both the United States District Court and by the respondent is that Mr. Lavoll got a great deal in this case. And so there wasn't any prejudice to him. So it all worked out okay, even if these inappropriate things were said. And in a vacuum, this was a great deal. He was facing 80 year parole, minimum eligibility, five or I think eight life sentences. However, if you look at the big picture of what happened, it really isn't a deal at all and there was no reason for Mr. Lavoll to plead guilty in this case. He had already been convicted in the other case. The sentence that he received on that case was five life sentences. His parole eligibility is 60 years and that's 60 calendar years. He will have to do every day of that and make every parole board to be parole eligible. He received a sentence that is life without the possibility of parole, essentially in the other case. So there was no reason for him to not contest what was going on. I mean, yeah, he could have gotten more time if he went to trial, but he could only serve so much time. He's only got one life. And so there were things that he had to change in his case. Now I'm missing, because I thought you were addressing the prejudice point. Yes. Well, the prejudice to him is he lost the ability to go to trial in a case where he says in his affidavit that he was innocent. He pled by way of Alford, so he did not admit guilt in this case. And he had other issues that were raised in the state post-conviction that were not appropriately raised since he pled guilty. But he certainly had plenty of things that he was complaining about that had already happened in the four weeks of this case before he pled guilty. I'm still missing the point, I guess. And maybe you can clarify it. There's a statement in the plea agreement. I am signing this agreement voluntarily after consultation with my attorney, and I am not acting under duress, coercion, or by virtue of any promises of leniency except for those set forth in the agreement. He signs it. Then the district trial court asks him in the plea hearing, did you sign it freely and voluntarily, and he says yes. Why, based upon that, that was before the court, was it unreasonable to make a finding that it was a voluntary plea? Because what Mr. LaValle says in his affidavit gets to something that I think goes beyond what those questions ask. I think on those face, those questions sort of bring to mind, you know, did somebody go hold a gun to your head? Did they tell you we're going to get a million dollars? But what we're talking about is his lawyer, in advising him about the plea, told him he didn't have a defense and this was his only option. And I do not believe that those questions really get to that kind of conduct by the lawyer. So the lawyer wasn't holding a gun to his head and saying you have to take this plea, but the lawyer, in advising him, gave him the kind of advice that made him feel boxed in like he had no other option. And so I think once the court was faced with what Mr. LaValle put in his affidavit, that there needed to be a hearing so that that could have been flushed out. Thank you. When did he write this affidavit you're talking about? The affidavit is on page 77 and 78 of the record. It was approximately a year after his conviction. Thank you. Thank you. Ready? Good morning. Eric Levine on behalf of respondents. And I'd just also like to take a moment to recognize Ms. Bell's candor and integrity in addressing that one issue. That's certainly consistent with my dealings with her over the last 18 months or so. We appreciate that as well. With respect to Mr. LaValle's claim that his guilty plea was somehow involuntary because of the actions of counsel, before you can even get to the two prongs of Strickland, before you can even address counsel's performance, you really even have to believe the allegation in the first place. And it's true that the state courts did not expressly address the claim with respect to what his counsel told him. However, they did address his claim on the merits and reach a decision. And in doing so, this Court can certainly imply or determine that they found against the credibility of Mr. LaValle's claim. How can we do that? I don't understand. Well, under Marshall v. Longberger, the United States Supreme Court, one said, first of all, this Court, as you know, doesn't make those credibility determinations. But they also said that failure to grant relief was tantamount to an express finding against the credibility of the defendant. And in addition --" It seems like you might be making your case harder, though, because even if you just take those at face value, the state courts found that their --" it was voluntary, correct? That's correct. I'm sorry. And he went through what was the equivalent of the Federal Rule 11, probably. He did sign the plea agreement. And then during his plea canvas at arraignment, the Court asked him, and he agreed that he read the plea agreement, he understood the plea agreement, signed the plea agreement, and that he thought it was in his best interest. Having done that under, again, Blackledge v. Allison, the Supreme Court has said those solemn declarations carry a strong presumption of verity. And in addition, that they present a very formidable barrier, you know, to claim otherwise now 10, 11 months down the line. And I'd suggest that if all it takes to overcome that formidable barrier is for a convicted person to simply say, my plea was involuntary because, and then fill in ineffective assistance, incompetence, whatever. If that's all it takes, then in effect you really have no barrier at all. It's certainly not a formidable barrier. There's got to be something else. And of course, in looking at whatever that something else may be, this Court, you know, is entitled to and should look at all the surrounding circumstances. And I think if you do that in this case, that also kind of belies the Mr. LaValle's claims. He did, in fact, get a great deal in this case. And what he was looking at was not an additional 80 years to life, but an additional 160 years to life, though. With the way life spans are now, that maybe is not a difference. But, one, he certainly was looking at, on this case, had he not taken the deal, gone to trial and lost, like he did in the companion case, he certainly would have spent the rest of his life in prison. As a result of this great deal that he agreed to, he's looking at life with the possibility of parole after 10 years, sort of concurrent to his preexisting sentence. So he's not spending one additional day in jail, in all likelihood, as a result of this. But what he does say of himself, he did have an appeal in that other case. I don't know the final results, or maybe there are no final results yet. But if for some reason that were to be reversed, if for some reason there were to be a commutation down the line, now instead of looking at spending the rest of his life in prison, he's going to be eligible for parole after 10 years. And he was, I think, about 23 years old at the time. So that was a very real benefit for him, preserving that possibility. So I think that goes, one, to the prejudice prong where it's unlikely that he would not have pled guilty otherwise. He was going to plead guilty under that deal anyway. And two, you can also look at that in considering the voluntariness of his plea, because that's one of those circumstances surrounding that process. So that's really the State's position, or Respondent's position, that, one, the allegations themselves are not credible. Two, even if you were to believe them, counsel has not performed below an objective standard of reasonableness. And three, that there was no prejudice involved whatsoever. Thank you. Thank you. I just have one brief point, and that is that the Nevada Supreme Court is not a fact-finding body. And in order for them to make the determination that they did, given the allegations made by Mr. LaValle, the Court had to make a credibility determination that they didn't believe what he said in his affidavit. And this Court does not need to defer to that sort of fact-finding under Nunez. The State Court refused to give Mr. LaValle a hearing, and we'd ask that the Court grant him relief. Thank you. Thank you. I just want to say in the time of a lot of discussion about lawyers' professionalism and the decline of it, it's nice to see that it hasn't done so in Nevada. Thank you. For your arguments, the case just argued, LaValle v. Griegas, is submitted.
judges: Wallace, Cudahy, McKeown